The first case for argument is 13-3099, Siegler v. Treasury. Ms. Steep? Yes. I'm sorry? Yes. Yes. Thank you. Thank you. Good morning, Your Honor. I am Leslie Dyack. I represent Zenobia Ziegler and this is the first time in this case. May I please report? We are here to correct a fundamental injustice, the removal of Zenobia Ziegler from the agency, in this case the Department of Treasury, which in light of Ms. Ziegler's outstanding 25-year career as a federal employee and the agency's history of leniency and tolerance of misconduct similar to Ms. Ziegler's, stands as not only unjust but ultimately unreasonable. Now, if I may, I thought I'd turn to the neglect of the evidence, the mistake of fact committed by the MSPB. Ms. Ziegler was the only individual who actually worked on the files and who actually made, prepared the files and made any corrections to the files. The only assistance she really received was a review by another employee, Sean McCamey. What about Nicole Graves? Excuse me? What about Nicole Graves? Nicole Graves had done some work earlier. I don't know whether you brought the entire record, but I called for the record from the MSPB so I could find out about the electronic records. And I have Ms. Ziegler's email to Graves dated January 25, 2011. You're familiar with that? Yes. So that includes, that contains what I believe are the electronic records, right? I'm not sure what exhibit it is. To be honest, I don't remember exactly if there were printouts of the work that Ms. Graves did in the record. Okay. So all of these records that were transmitted from Ms. Ziegler to Ms. Graves on January 25, 2011 reflect incompletion in that the most recent entry in these documents is 2007 or 2008. Right. You're familiar with that? Well, Ms. Ziegler testified that she did not, when she... I'm going to ask you a question. Were these files complete as of January 25, 2011? Were they up to date? I think the answer is no. The answer is no. The answer is no. Okay. The answer is no. So for 2008 is the period, is the date that's most frequently in the last entry. So there's a three-year lag, right? No. As of January 2011, the files are three years old. No, that's not correct, Your Honor. I know. Ms. Ziegler did not give Ms. Graves the latest copy of the electronic files. She gave her a copy... Is that in the record? Yes. Where? That's it. I looked. I've got the entire transcript. It is in the record. She did testify to that. I know she did testify to that, but I'm looking at what the hard copy evidence was. It was I'm sorry. Well, certainly her testimony is evidence, Your Honor, but we did not put into evidence, we could not put into evidence the hard copies of the files as of January 25th because by the time she was terminated, she had already updated a bunch of them. So it was sort of like that had already gone past. So once you update a computer file, she didn't necessarily have printouts of what her files looked like on January 25th. So on March 10th, when we're trying to complete the files, she says in an email, I'm nowhere near finished. On March 10th? Yeah. You know that email? I thought it was earlier than that, but she had... That's what I'm talking about. March 10th is right before the folks are going to come in, right? I think that was March 8th was the day before. I think they came in on March 9th, if I'm not mistaken. And so this is on March 8th. Okay. Testimony email from Ms. Ziegler to Mr. Crane. Yes. Saying I'm nowhere near finished. Well, she did. Doesn't that mean that the files were not complete as of that date if I'm nowhere near finished? Your Honor, let me... Your Honor, that should be a yes or no answer, I think. I think that they were not finished for the peer review. Let me put it that way. What does that mean? I mean, you're finished. Either the files, as I understand it, the electronic system that Ms. Ziegler set up was a sort of a format. So it had the name, like I'm looking at Mr. Austin, GS-13, class, course title, training, source of litigation, date of courses, certificate, yes or no. That's a template. Right. And I gather that was an electronic template. Correct. And I gather that when, for example, Mr. Austin went for a course title in a particular place on a date and yes or no got the certificate, in order to make the files complete, that information would be plugged in. Correct, Your Honor. It would be like going to a type, you know, put the computer program up and type it in. And there would be a hard copy document somewhere that evidenced the event that it occurred. Correct. Your Honor, if I may answer your question, I think this is the answer. The problem was, for the peer review, Ms. Ziegler couldn't just use that electronic file printout. What she needed to prepare for the peer review, which was different than what she needed on a daily basis, was the actual hard copy file with the certificate placed in it. Because, I mean, the short of the matter is no one would ever know if the computer template with the information plugged in is correct or not, unless you could verify it by looking at the hard copy. Right. And a gentleman, in this time period getting ready for the peer review, did exactly that and found that there were many, many entries in the printout that were incorrect. Well, okay. McKamey. And there were many that didn't exist that should have. Okay. Well, actually. Am I correct? To a certain extent. But Ms. Ziegler testified. How much? Well, I'm still answering the question. Ms. Ziegler testified that, yes, he found some omissions, but not that many. So, not when he went through the file, okay, after she had completed that. Okay. I'm now looking at it. Didn't Ms. Ziegler admit that she used abusive language and that she did not do as Metric instructed? And isn't that substantial evidence sufficient to support the board's finding? Okay. She admitted, well, she admitted to abusive language. Okay. Not, of course, towards her supervisor. She was venting at another supervisor. She did not swear or curse or, well, I guess she may have raised her voice to her supervisor. She, I don't think we admitted to the insubordination, Your Honor. This is what the board held. You're not appealing. We're not. Your response to Judge Lurie's question, you're only appealing two issues in this case. That's correct. One is the dereliction of duty and the second is the disparate treatment. That's correct. You have agreed that the board was correct in finding insubordination and correct in finding abusive language. Well, we also agreed that, well, it's more than we. If it's not appealed and it's found against you. It's not appealed and it's found against us. So you've waived any argument on that basis. That's correct. But we did not admit to it. I think to Your Honor's question, we didn't admit to it in the hearing, which is what I understood your question to be. The board found against us and we didn't appeal. We didn't believe we had enough evidence to appeal it. But we didn't admit to that during the hearing. But you lose then if there are findings that the board made that you haven't appealed. I don't believe so because we have a disparate penalty argument. There was no individual decision by the deciding official that your client would have been removed on any one of the charges. Correct? I don't believe she made that decision. It wouldn't make any difference if you won on the duty issue. You mean on insubordination and bad language. I'm sorry. Frequently the deciding official will say, I found that you did three things bad and I would remove you on any one of the three. That finding I did not. I'm going to ask the government. I did not see that. No, I didn't see that. So that's why you have legs, if you will, on your dereliction of duty charge as well as your disparate penalty. Well, that and again the disparate penalty, which is an entirely different argument because we believe, and I think this is really a large part of it, that William Sterling should have been considered a similarly situated employee and had her evidence been allowed. I have a question that's sort of an interesting question about Sterling, this other case. The interaction between the people in the other case that you're saying is a similar case, sufficient for disparate treatment analysis. Those comments were going supervisor to supervisor. I'm sure you know that. That's what I found out when I looked in the records. So my question is, does it make any difference when you're talking about misbehavior in the workplace when it's an underling who is misbehaving with respect to giving disrespect to a supervisor, instead of where you have two supervisors going at each other? Well, actually, Mr. Sterling, although he was a supervisor, he had first and second levels. No, Sterling and the guy that was yelling the dirty language at him were both supervisors. Right, but they were his supervisors. He was subordinate. So it was Mr. Sterling, Mr. Smith, Don Smith, and Brian Crane. Brian Crane was the second level supervisor of Mr. Sterling. Mr. Smith was the first level supervisor of Mr. Sterling at the time. So they were his supervisors. They may all have been supervisors. While we're on the disparate treatment issue, part of the reason why I got the record was that I couldn't ever find the actual transcript of the deposition of the other individual. Of Mr. Everett? There are two people that you wanted to have testified. Right, we only had one disposition transcript. That was Mr. Everett's, and that was in the appendix, and then a declaration from Mr. Feinberg. Right. And those people were your basis for saying that there would be sufficient evidence there for them to testify on disparate treatment. It didn't seem to me that in the case that you're trying to set up as in disparate treatment that there was any allegation of dereliction of duty. No, there was not an elective duty charge. Let's assume that you're going to decide to discipline someone who, let's say, has engaged in three forms of misbehavior, and you're going to decide to discipline a person who's engaged in one form of misbehavior. How can the two be comparable for disparate treatment purposes? Well, the way the MSPB has actually done this type of analysis, but in fact, the table of penalties for the first penalty of neglect of duty, which was technically the charge, is oral reprimand, just five days suspension. One to five or something, yes. So that's so much less than removal. And that combines with the fact that Mr. Sterling, and I'm in my rebuttal time, so I'm going to try to speak fast if you don't mind, Mr. Sterling only got a reprimand. And the comparison between a reprimand and removal, even if you take into account a five-day suspension, that's still disparate. I think I said in the brief, you can multiply the five-day suspension 10 times, and you still have something much less than a removal. And if I may, I'm now almost two minutes for rebuttal, so if you don't mind. Yes, please. Thank you. I'll get it from the government. Excellent. Good morning, Your Honors, and may it please the Court. Because the Board's decision here was supported by substantial evidence, and the Board properly concluded that Ms. Ziegler neglected her duties and failed to prove that she was subject to disparate treatment, we respectfully request that this Court affirm the Board's decision. As this Court noted on appeal— Are you familiar with the record in this case? I am. I want to ask you some questions about what I got when I asked for the whole record. I'm still curious about the electronic system that Ms. Ziegler set up, because she hadn't been told how to keep these records. And I think the agency has admitted that she was in charge or she was free to create whatever system she wanted to. Your view is that she was just responsible for keeping it up to date once she set it up. And my understanding is that shortly before the arrival of the folks to do the peer review, there was some work that was done that was necessary to bring the files up to date for peer review purposes. And Ms. Ziegler's attorney doesn't seem to disagree with that. In the file, I found a number of pages that are just loose where there were training records that are marked out, highlighted, marked out, some with check marks as if it's here. I'm curious to know if you can tell me whether that's the result of the person that came in who did the checking on the records. Yes, Your Honor. It's my understanding that that is the checking. Because that shows, I mean, Ms. Ziegler's attorney said to me when I was asking her about the extent of that revision, which goes, in my mind, to the degree of completeness of the files, yes or no, right before the peer review, there are a number of 15, 20 markups. So that would seem to me to be more than a few. Yes, that is correct, Your Honor. And as the administrative judge found, which is at page 12 of the appendix, Ms. Ziegler admitted that she had not maintained the hard copy files and even that the electronic files were not up to date as of 2011. So in the hearing, that was admitted by Ms. Ziegler. And as the administrative judge also found, if the electronic records had been kept up to date, Ms. Ziegler would have been able to simply print off the records and have the completed files ready for the peer review. In fact, she was not able to do that and did not have the completed files. Well, in terms of her stated duty, her job description, she's required to keep these training files right, although she isn't told how to do it. She's required to keep the training files? Well, yes, Your Honor. On page 64 of the appendix, it outlines the standard that Ms. Ziegler is supposed to follow with regard to maintaining training records. And she's supposed to timely and accurately maintain all of the employee training records, collecting and maintaining all performance plan training records and certificates, and completing all CIGIE and TOIG annual periodic... What are the CIGIE? That is the Council for the Inspectors General for Integrity and Efficiency. And peer reviews come under. That's part of the process that the Council for Inspectors General for Integrity and Efficiency has. Is there any dispute about what you're just telling me? I mean, I wasn't certain. I don't know whether the other side agrees with you. I thought I read something in your adversary's brief that suggests that these weren't quite the same as peer review files. Well, in the appendix at 613 to 614, there's testimony from Mr. Metrick that explains the background of the peer review and that this is part of the CIGIE requirements. It's an every three-year system. So the last time the records were reviewed was in 2008. This is now the 2011 peer review, and that's when the agency determined that the files were not up to date. And is it your view that as of beginning in January, Ms. Ziegler was on notice that this review might be coming at some point in time? At what stage do we... Well, that is, it's an every three-year... It happens every three years, so everyone in the agency was on notice that it was happening in 2011. The agency had been preparing for about a year out beforehand. Can I ask you a more general question? And Judge Clevenger alluded to this when he was talking to your friend, which is we had a run of these cases a few years ago, and I haven't seen it recently, on the question of whether or not when you're testifying, the deciding official, if you've got three bases for a charge, if in this case, if there was any testimony by the deciding official as to whether or not if one of them dropped out, if one of the suspects dropped out, whether or not the penalty would still be sustained or not. Is that something that came up here? No, it's my understanding that it did not. And when you look at the deciding official's decision, which is at page 37 of the record, he considered all three charges together, and we respectfully submit that the neglected duty charge should be sustained because the performance plan clearly states that Ms. Ziegler is supposed to maintain these files up to a 90% rate of accuracy. Up to a 90%? Where is that? That is on page 64 of the appendix, Your Honor. Therefore, to receive a fully successful rating, the employee must ensure that training records and employee personnel folders are at least 90% accurate. And it's undisputed that as of the date of the peer review, only 11 of the 25 training records were up-to-date, accurate, and ready to be shown. Let me ask a question on the Board's decision with regard to the disparate treatment issue. Yes, Your Honor. The Board, among other things, concluded that Everett and Trice's proper testimony appears to be entirely cumulative of other undisputed testimony. Yes, that is correct. That struck me as odd because I wasn't aware of any other testimony that had been given that goes to the disparate treatment issue. Well, the disparate treatment issue, it's my understanding that the proper testimony would have discussed the situation involving Mr. Sterling. And who was going to offer that testimony? The special agent in charge, Phillips, who was in the office the day of the incident. And who was going to call him? Did he testify? And he did testify, Your Honor. It's in the appendix at 854 to 856. He was in the office on the day of the incident  And neither of the two proffered witnesses were actually present in the meeting. So this is just what the other two witnesses heard in the office that day as well. So there's really no reason that the... What was it? I'm sorry, Your Honor. 854 to 856. Can I ask you another more general question? Which is that, as you well know, you've got your line of misconduct cases and you've got your line of performance cases. And here, the neglect of duty, at least, was based on her performance. But you put it... Neglect of duty, though, is under a misconduct rubric as opposed to a performance rubric. And is there any place that points to when clearly a set of circumstances falls in one category versus another? Not that I can speak to right now, Your Honor. But this is a misconduct charge under Chapter 75. So there's no requirement for notice or an opportunity to improve that would be required for a performance-based charge under Chapter 45. So this is considered a misconduct charge. It was a neglect of duty. The standard is objective and clear. It requires a 90% accuracy rate for fully successful performance, and Ms. Ziegler did not meet that standard here. But there were certain circumstances, there have been cases where this kind of conduct falls under or has been brought under a performance rubric rather than a misconduct. Well, it can be brought under both. And in this instance, the agency chose to bring it under a misconduct-type charge, and they supported that charge with substantial evidence as the Board properly concluded. I suppose the standard is harder, I think. But I think if you do a performance case, there's lots of bells and whistles that have to precede that. That is correct, Your Honor. And the agency's penalty of removal was… The agency has a discretion to use either one. The agency has absolutely discretion. We've never been presented with a question that the agency should or should not have that discretion, right? That's correct, Your Honor, yes. Interesting issue. And the employee has substantially more procedural rights, if you will. They have a chance to cure. That is correct. Something like that, right? But again, the neglect of duty charge is not the only charge at issue here. It's the neglect of duty charge in addition to the insubordination and unprofessional conduct. And Ms. Ziegler had been counseled previously in April of 2010 regarding unprofessional conduct toward her supervisor. So this was actually a second incident of unprofessional conduct. Can I ask another question on the disparate treatment issue? I didn't see it referred to in the Board's decision, but in Mr. Sterling's case, was there an April Fool's joke history in his case as well? No. It was the letter of reprimand is the... Put it this way, in terms of Mr. Sterling, was that the first time he had been disciplined or recommended her discipline? That is my understanding, Your Honor, yes. And in addition, Mr. Sterling was only reprimanded for unprofessional conduct. He did not have a charge of insubordination attached to that unprofessional conduct. He was simply charged with... Well, that's part of the reason why Ms. Ziegler was trying to get those other two witnesses in, because she thought she could get them to give testimony that would lead you to say that there was insubordination in the nature of what was being said. Well, again, those two witnesses weren't actually in the room with Mr. Sterling and his supervisors at the time. They were just outside the room. It would have been their view as to whether or not it was insubordinate conduct for what it's worth. Yes. It wouldn't have been hearsay. It would have been speculation as to whether or not he had been told something. They did not hear any direct testimony regarding actually Mr. Sterling defying an order. It was just supposition. And because Ms. Ziegler can't prove a similarity of circumstances but disparate treatment, we respectfully request that this Court affirm the Board's decision both with regard to the effective duty charge and the reasonableness of the penalty. Thank you. I just have a couple minutes. If I may address the filing system and just go over this once, I think this may help. Ms. Ziegler had developed a practice where she was updating the training files every six months in preparation, the individual training files that she had kept electronically. In 2008, she moved them away from them in a paper format to electronic maintenance. The electronic system is simply a reflection of what exists in paper form sometimes. Correct, yes, yes. But it's easier to track when she has to. Somebody calls her up and asks her, what about Adams? And she can very quickly then say Adams is, he's current. Exactly. Because the training files are actually functional. They're not just theoretical for a peer review. So she updated those every six months in preparation for the mid-year and yearly performance evaluations because then you had to go through what people needed and what courses they should be taking with professional development. She had the paper files organized, but they were organized by training course, not by individual, because she was tracking them. And this is testimony from Nicole Graves and herself. She had the papers indexed and categorized so that she could track who had taken courses and who had given her certificates. So again, it was a practical usage. And then she also did update the employee personnel files, their official personnel files, which had a section for training certificates. Those were the ones that were required by the Treasury and the CIEGIE, whatever. Those were required for the agents, and there's no suggestion that those were out of date. Let's be clear on that. Now, if I can turn next to Mr. Everton twice and whether they were witnesses or not, they are testifying to what they actually heard. Mr. Phillips was very clear in his testimony that he left the building before the incident happened and didn't hear anything. And he said he didn't know anything and couldn't hear anything, whereas Mr. Trice was in the building, heard Mr. Sterling, and heard the other individuals. So I don't see why that's not direct testimony. And that is my time. Thank you very much. I thank both counsel. The case is submitted.